T.C. Summary Opinion 2005-77


UNITED STATES TAX COURT



DANIEL F. MONTE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7388-04S.                    Filed June 7, 2005.


Daniel F. Monte, pro se.

<u>Jennifer S. McGinty</u>, for respondent.



    ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time that the petition was filed.[1]  The decision to

_____

    [1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2000,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined an accuracy-related penalty under section 6662(a) of $2,900 with respect to petitioner's Federal income tax for the taxable year 2000.

The only issue for decision is whether petitioner is liable under section 6662(a) for an accuracy-related penalty. We hold that he is not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Buffalo, New York.

Petitioner and his former spouse were married in August 1982. They had three children from their marriage, born in October 1983, March 1987, and June 1990.

Petitioner has been a mortgage broker for more than 20 years and is a senior vice president at a mortgage banking company. During their marriage, petitioner's former spouse was a homemaker.

At all relevant times, petitioner has maintained several brokerage accounts, solely in his name, at First Albany Capital

(First Albany). In 1995, petitioner and his former spouse opened college education funds with First Albany for the benefit of their children (education accounts). An investment manager managed the education accounts and invested the funds solely in mutual funds. Any income earned in the education accounts was reinvested in the respective education account.

In 1999, petitioner deposited into the education accounts the proceeds received from the sale of his mortgage banking company in 1998 or 1999, which proceeds comprised most of the balance in the education accounts. Between 1995 and 1999, the education accounts did not earn substantial dividends or capital gains. Petitioner and his former spouse did not make any contributions to the education accounts in 2000.

In 1999, petitioner moved out of the marital residence located in East Aurora, New York (Aurora home), and moved to a townhouse in Almond, New York. Petitioner and his former spouse divorced in July 2000.[2] At the time of the divorce, the children continued to reside with petitioner's former spouse at the Aurora home, and petitioner resided on Clarendon Place, Buffalo, New York (Clarendon address).

With respect to the children's college education, a property settlement and separation agreement pertaining to petitioner's divorce, stated in pertinent part:

---

[2] In 2000, the children were ages 17, 13, and 10.

> The parties acknowledge that the children have a
> brokerage account located at First Albany which is
> maintained by the parties, same having a balance of
> approximately $350,000.00.  It is the intention of the
> parties that this account be utilized for purposes of
> paying the children's college education for 4
> consecutive years and that an inter vivos trust be
> established funded with the funds for the benefit of
> the children by 9/1/00.  * * *  The Husband shall make
> the day to day investment decisions regarding these
> funds, however, all major investment decisions shall be
> agreed upon by the parties.  * * *  Both parties shall
> receive all monthly statements for this account * * *.

Petitioner's former spouse, however, established the Monte
Educational Trust in April 2002.

During their marriage, the statements and Forms 1099, if
any, concerning the education accounts reflected petitioner's and
his former spouse's joint names and were addressed and mailed to
the Aurora home.[3]  After an acrimonious divorce, the statements
continued to reflect petitioner's and his former spouse's joint
names and to be addressed and mailed to the Aurora home.

In 2000, petitioner contacted First Albany on several
occasions informing the company of an address change and
requesting that copies of the education account statements, as
well as his individual brokerage account statements, be mailed to
the Clarendon address.[4]  Pursuant to his request, petitioner

---

[3]  Although not specifically referenced in the record, it
appears that Form 1099-DIV, Dividends and Distributions, is the
relevant document.

[4]  Pursuant to petitioner's change of address request, First
(continued...)

received statements and Forms 1099 for 2000 pertaining to his individual brokerage accounts; however, he did not receive any statements or Forms 1099 for 2000 pertaining to the education accounts. Petitioner started receiving the education account statements in September 2001.[5]

In gathering the information for his 2000 Federal income tax return, petitioner contacted both his financial adviser, Michael Evereth (Mr. Evereth), and Mr. Evereth's assistant at First Albany to determine whether there were any Forms 1099 for the education accounts because the mutual fund market in 2000 experienced unusual gains. Petitioner was told that they would look into the matter and furnish him with the Forms 1099, if any. Petitioner never received any Forms 1099 for 2000 from First Albany pertaining to the education accounts.[6]

In addition to contacting First Albany directly, petitioner contacted his former spouse on several occasions to obtain the statements and any Forms 1099 for the education accounts.

_____

[4](...continued)
Albany mailed copies of the education account statements to the wrong address.

[5] In 2002, the Forms 1099 were sent to the trustees of the Monte Educational Trust.

[6] In August 2000, First Albany sold its private client group to First Union Securities (First Union). Mr. Evereth also joined First Union.

Petitioner never received any documents from his former spouse, and she never divulged any information to him.[7]

Petitioner's accountant, David R. Barrett (Mr. Barrett), prepared petitioner's Federal income tax return for 2000. Mr. Barrett has prepared petitioner's income tax returns since 1990 (including petitioner's and his former spouse's joint returns during their marriage).[8] In his 2000 return, petitioner reported only the income from his individual brokerage accounts as disclosed in the Forms 1099.

During the administrative phase of this case, respondent proposed a deficiency in petitioner's income tax for 2000 of $14,499 because of petitioner's failure to report dividends and capital gains from the education accounts. Upon learning of the income, petitioner promptly paid the proposed deficiency in full.

In the notice of deficiency, respondent determined that petitioner was liable for an accuracy-related penalty under section 6662(a) because of his failure to report income from the education accounts.

### Discussion

The Commissioner bears the burden of production with respect to a taxpayer's liability for any penalty. Sec. 7491(c). To

---

[7] Petitioner's former spouse claimed to have forwarded everything to him and that there were no Forms 1099.

[8] Mr. Barrett also prepares the income tax returns for the Monte Educational Trust.

meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Where an exception to the penalty is afforded upon a showing of reasonable cause, however, the taxpayer bears the burden of showing such cause. Id. at 447. The taxpayer still has the burden of proving that the Commissioner's determination of the accuracy-related penalty is erroneous. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933); Higbee v. Commissioner, supra at 446-448.

As relevant herein, section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to either (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. See sec. 6662(a) and (b)(1) and (2).

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown

on the return, or $5,000. Sec. 6662(d)(1)(A). An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return. Sec. 6662(d)(2)(A).

Whether the accuracy-related penalty is applied because of negligence or disregard of rules or regulations, or a substantial understatement of tax, section 6664 provides an exception to imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for the understatement and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.; see United States v. Boyle, 469 U.S. 241, 242 (1985). Although not defined in the Code, "reasonable cause" is viewed in the applicable regulations as the "exercise of ordinary business care and prudence". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see United States v. Boyle, supra at 246. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability, including reliance on facts that, unknown to the taxpayer, are incorrect. Id.

Respondent satisfied his burden of production under section 7491(a)(1) because the record shows that petitioner substantially understated his income tax for 2000.  See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 442.  Accordingly, petitioner bears the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the understatement for which he acted with reasonable cause and in good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446.

Respondent argues that petitioner is liable for the accuracy-related penalty because petitioner failed to make reasonable attempts to obtain the pertinent information to report the income from the education accounts, and that petitioner did not have reasonable cause nor did he act in good faith with respect to the understatement.  In contrast, petitioner contends that "he did everything to try to file the appropriate tax, but never received the Forms 1099".

Although this is a close case, the totality of the facts and circumstances leads us to conclude that petitioner had reasonable cause for the understatement and that he acted in good faith with respect to such understatement.

We note at the outset that we found petitioner to be a very conscientious taxpayer.  In preparing to file his 2000 return, petitioner made concerted efforts to obtain any statements and

Forms 1099 pertaining to the education accounts. On several occasions, petitioner attempted to obtain the information from his former spouse, who refused to divulge any information or inconsistently claimed that she did not receive any documents or that she sent him everything. It is understandable that petitioner was unsuccessful in obtaining documents from his former spouse because of their acrimonious divorce.

In addition, petitioner, on several occasions, submitted a change of address to First Albany requesting that all documents related to the education accounts be mailed to him at the Clarendon address. Petitioner simultaneously submitted a change of address to First Albany requesting that all documents related to his individual brokerage accounts be mailed to him at the Clarendon address. Peculiarly, petitioner received all statements and Forms 1099 pertaining to his individual brokerage accounts, but he never received any such documents for 2000 pertaining to the education accounts. Indeed, petitioner only started receiving these statements in 2001. Mr. Evereth admitted that the company did not send the statements to the correct address pursuant to petitioner's repeated requests.

Moreover, petitioner specifically requested that First Albany mail him copies of the Forms 1099 pertaining to the education accounts. In response to his request, First Albany stated that it would check and mail him the Forms 1099, if any.

Petitioner never received any Forms 1099 for 2000 from First Albany pertaining to the education accounts. It was not unreasonable for petitioner to assume that there were no Forms 1099 issued for 2000 for which he would be responsible for reporting on his 2000 return because, after making repeated requests, he never received any Forms 1099 from either his former spouse or First Albany. In addition, it was not unreasonable for petitioner to assume that a trust had been established pursuant to the property settlement and separation agreement, and that, if there was any income, the trust would have been responsible for reporting that income on the trust's income tax return.

Upon a review of the record, we find that petitioner had reasonable cause to believe that there were no Forms 1099 pertaining to him, and that he acted in good faith with respect to the understatement attributable to the income reported on those forms.

### Conclusion

In view of the foregoing, we hold that petitioner is not liable for the accuracy-related penalty pursuant to section 6662.

We have considered all of the arguments made by respondent, and, to the extent that we have not specifically addressed those arguments, we conclude that they are unconvincing.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue,

<u>Decision will be entered</u>

<u>for petitioner.</u>